UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ERNEST SILVA,** *et al.*                                      **CIVIL ACTION**

**VERSUS**                                                      **No. 04-3324**

**ST. CHARLES STEEL WORKS, INC.,** *et al.*                     **SECTION: I/2**

### ORDER AND REASONS

Before the Court is a motion for summary judgment filed on behalf of defendant, St. Paul Insurance Co. For the following reasons, defendant's motion for summary judgment is **GRANTED.**

### *BACKGROUND*

On December 13, 2003, the F/V Atlanta capsized and sank off the coast of Massachusetts.[1] Three crew members were killed, and four others on board allegedly suffered serious mental and physical injuries.[2] Plaintiffs, the seven crew members and their families, brought this action against St. Charles Steel Works, Inc. ("St. Charles") and its insurance providers, St. Paul Insurance Company ("St. Paul") and Great American Insurance Company of New York, on December 6, 2004, alleging that the negligent design and construction of the F/V

---

[1] Rec. Doc. No. 59-2, p. 2.

[2] Rec. Doc. No. 59-2, p. 2.

Atlanta led to the accident.[3]  Plaintiffs argue that the boat had a high center of gravity that predisposed it to capsizing.[4]

On December 12, 2001, C & S Fisheries, Inc. and St. Charles entered into a contract to construct the F/V Atlanta, a seventy-two foot scallop boat.[5]  Conversations about the design and manufacture of the F/V Atlanta, however, began on or about September 13, 2001.[6]

Defendant St. Paul provided a liability insurance policy with two consecutive annual terms to St. Charles.[7]  The first annual term ran from October 27, 1999, to October 27, 2000, and the second ran from October 27, 2000, to October 27, 2001.[8]  The liability policy was an "occurrence" policy in which a valid claim requires that an "occurrence" take place during the policy term.[9]  An occurrence is defined in Section 1, Clause 13(L) in each of the policies as:

> an accident, including continuous or repeated exposure in conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.[10]

In addition, both "bodily injury" and "property damage" were defined as events occurring during

---

[3] Rec. Doc. No. 1, p. 4 ¶12.

[4] Rec. Doc. No. 60-1, p. 2.

[5] Rec. Doc. No. 60-1, p. 2.

[6] Rec. Doc. No. 60-1, p. 3.

[7] Rec. Doc. No. 59-2, pp. 2-3.  St. Paul describes these policies as providing "marine general liability and ship repairer's legal liability."

[8] Rec. Doc. No. 59-2, pp. 1-2; *see also* Rec. Doc. No. 27-2, p. 3.

[9] Rec. Doc. No. 59-2, p. 4.

[10] Rec. Doc. No. 59-2, p. 4; *see also* Rec. Doc. No. 27-2, p. 9.

the policy period.[11]

St. Paul contends that it is not liable for the alleged negligent design and construction because the coverage it provided expired before an occurrence--here, the sinking of the vessel-- took place.[12]  Plaintiffs argue that an occurrence took place during the design of the F/V Atlanta, beginning three months prior to the expiration of the liability insurance; plaintiffs contend that defendant's negligent design was an occurrence that triggered liability under the policy.[13] Defendant St. Paul filed a motion for summary judgement on August 7, 2006.[14]  Plaintiffs filed their opposition on August 15, 2006.[15]  Defendant St. Charles filed opposition to St. Paul's motion on November 1, 2006.[16]

## *LAW AND ANALYSIS*

### I. Standard of Law

Summary judgment is proper when, after reviewing the "pleadings, depositions, answers to interrogatories . . . [and] affidavits," the court determines that there is no issue of material fact. Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266 (1986).  The party

---

[11] *See* Rec. Doc. No. 27-2, pp. 7, 9.

[12] Rec. Doc. No. 59-2, p. 2.

[13] Rec. Doc. No. 70-1, p. 4.

[14] Rec. Doc. No. 59-1.

[15] Rec. Doc. No. 60-1.

[16] Rec. Doc. No. 70-1.

seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The showing of a genuine issue is not satisfied by creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The non-moving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731 (1999) (internal quotation and citation omitted) (alternation in original).

**II. Discussion**

Defendant argues that summary judgment is appropriate because the accident occurred outside the policy term.[17] Defendant contends that the policy term expired October 27, 2001,

---

[17] This matter concerns marine insurance policies, and neither party has identified any federal maritime rule that should apply. *See Ingersoll-Rand Fin. Corp. v. Employers Ins. of Wausau*, 771 F.2d 910, 912 (5th Cir. 1985) ("[T]he interpretation of a contract of marine insurance is--in the absence of a specific and controlling federal rule-- to be determined by reference to appropriate state law."); *see also INA of Tex. v. Richard*, 800 F.2d 1379, 1380 (5th

while the accident, the capsizing of the F/V Atlanta, occurred on December 13, 2003.[18] The issue before the Court, then, is whether the alleged negligent design of the F/V Atlanta is an "occurrence" within the coverage period. Defendant's argument relies, primarily, on two cases.[19] In *Oceanonics, Inc. v. Petroleum Distributing Co.*, the plaintiff brought an occurrence insurance claim against the owner and operator of a crane whose boom collapsed. 280 So. 2d 874, 875 (La. App. 3d Cir. 1973) ("*Oceanonics I*"). The collapse was due to a defective weld that was performed during the coverage period; however, the collapse occurred after the insurance policy had expired. *Id.* at 876. The Supreme Court of Louisiana affirmed the decisions of the trial and appellate courts in favor of the defendant, the insurer; the court recognized the occurrence as the date of the collapse and not the date of the defective weld. *Oceanonics, Inc. v. Petroleum Distrib. Co.*, 292 So. 2d 190, 192 (La. 1974) ("*Oceanonics II*"). There, the policy at issue insured "all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, *caused by an occurrence*." *Oceanonics I*, 280 So. 2d at 876 (alteration in original; emphasis added). The policy defined "an occurrence" as "an accident, including injurious exposure to conditions, which results, *during the policy period*, in bodily injury or property damage." *Id.* The court looked to this language, finding that "[t]he policy stipulates in clear, unambiguous language that coverage is provided only for property damage which occurs during the policy period."

---

Cir. 1986) (describing the presumption of state law as "axiomatic"). Accordingly, Louisiana law will govern the Court's interpretation of the insurance policies.

[18] Rec. Doc. No. 59-2, pp. 4-5.

[19] Rec. Doc. No. 59-2, pp. 5-6.

*Oceanonics II*, 292 S. 2d at 191-92.[20]  Defendant concludes that, like the defective welding in *Oceanonics*, the negligent design of the F/V Atlanta is not the occurrence for purposes of determining coverage.[21]

In *St. Paul Fire & Marine Insurance Co. v. Valentine*, 665 So. 2d 43 (La. App. 1st Cir. 1995), a Louisiana court relied in part on *Oceanonics II* and found that coverage did not exist for an occurrence outside of the policy's term.  In that case, the plaintiff sued to recover damages for a fire that occurred years after the defendant insurance company's policy had lapsed, but which was allegedly caused by defective wiring installed during the policy period.  *Id.* at 45.  In analyzing the occurrence policy at issue in the case and finding no liability, the court stated that "the term 'occurrence' is generally understood to mean the time and/or event when negligence manifests itself by causing damages, rather than the commission of the causative negligence."  *Id.* at 46 (citations omitted).[22]  Defendant analogizes to this case, arguing that the occurrence is

---

[20]The *Oceanonics II* court distinguished the policy language it considered from that in *Kendrick v. Mason*, 99 So. 2d 108 (La. 1958).  In *Kendrick*, the defendant insurance company argued that its policy did not cover an explosion caused when its insured, a contractor performing sewerage work, damaged municipal gas lines.  *Id.* at 279.  The insurance company contended that, because the accident fell outside of the term of its policy covering the contractor, it was not liable for the negligent acts that led to the accident.  *Id.*  The *Kendrick* court, however, found that the policy language was too ambiguous and did not exclude coverage for the contractor's negligence.  *Id.* at 296.  The *Oceanonics II* court found the policy language in that case sufficiently specific to meet the requirements of *Kendrick*, and the court declined to follow *Kendrick*.  *Oceanonics II*, 292 So. 2d at 191.  In particular, the court noted that the policy definition of "occurrence" as damage occurring "during the policy period" appeared tailored to avoid the ambiguity discussed in *Kendrick*.  *Id.* at 192.  Like *Oceanonics II*, the language in the second St. Paul policy indicates that it "shall cover all occurrences on or after October 27, 2000, and prior to October 27, 2001."  Rec. Doc. No. 59-2, p. 3.

[21] Rec. Doc. No. 59-2, p. 5.

[22]*See also Alberti v. Welco Mfg.*, 560 So. 2d 964, 965 (La. App. 4th Cir. 1990) (finding no covered occurrence where improper application of sheetrock mud during policy period caused discoloration of walls after policy had lapsed); *Prudential Prop. Cas. Ins. Co. v. Stuckey*, 486 So. 2d 352, 358-59 (La. App. 3d Cir. 1986) (finding that policy defining "an occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured," did not cover damage from fire that occurred after the expiration of the policy but which was caused by negligent construction during the policy period).

the damage itself--the sinking of the F/V Atlanta--rather than the design and construction of the vessel that allegedly caused the accident.

In addition, the *Valentine* court noted that, even though the policy's definition of "occurrence" did not provide that the damage take place during the policy period, this definition had to be read in conjunction with the definition of "property damage," which included such a limitation. *Id.*; *see also Blue Streak Indus., Inc. v. N.L. Indus., Inc.*, 650 F. Supp. 733, 735 (E.D. La. 1986) (Mentz, J.) ("The definition of 'occurrence' is silent as to the period of coverage and must be read together with the definition of 'property damage' which requires that the damage must 'occur during the policy period' . . . ."). Likewise, while the definition of "occurrence" in the St. Paul policy does not include a specific temporal limitation, the plain meaning of the policy demands that this provision be read in conjunction with the statement of the policy period and the definitions of "bodily injury" and "property damage," which specifically refer to the policy period.

Plaintiffs attempt to distinguish these cases by citing to seemingly contradictory language from other courts.[23] They cite to language in *Case v. Louisiana Medical Mutual Insurance Co.*, 624 So. 2d 1285, 1289 (La. App. 5th Cir. 1993), which states that "'an occurrence' policy . . . merely requires the commission of the negligent act during the policy's effective period regardless of the date of discovery and reporting." *See also Pittman v. Nutmeg*, 708 So. 2d 832, 834 (La. App. 3d Cir. 1998); *Ward v. Vizzini*, 695 So. 2d 1012, 1015 (La. App. 5th Cir. 1997).

---

[23] Rec. Doc. No. 60-1, pp. 4-5. Plaintiffs also argue that defendant's motion for summary judgment is procedurally barred because defendant did not arrange for a status conference with the Court prior to filing its motion, as per the local rules of this section. Rec. Doc. No. 60-1, p. 4. The parties did discuss the motion, however, during a January 30, 2006, status conference in which the Court allowed defendant to timely re-file its motion after taking certain depositions. Rec. Doc. No. 33, p. 2.

Plaintiffs fail to identify, however, the critical distinction between the "claims made" policies at issue in those cases and the occurrence policy in the instant case.  In "claims made" insurance policies, as opposed to occurrence policies, coverage only attaches if the harm is discovered and reported within the policy period.  All three of the cases that plaintiffs cite for this argument clearly make this distinction.  *See Pittman*, 708 So. 2d at 834; *Ward*, 695 So. 2d at 1015; *Case*, 624 So. 2d at 1289.  As a result, these cases provide no discussion of the "negligent act" triggering liability, and they are of little help to the Court in defining an occurrence.  Moreover, plaintiffs provide no argument that this policy is a "claims made" policy, and the Court independently finds no language supporting that interpretation.

In its separate opposition, defendant St. Charles notes that Louisiana courts have applied various theories to judge when an occurrence has taken place and suggests that, therefore, an issue of material fact exists as to the interpretation of the policy.  St. Charles notes three cases in which courts have applied a "continuous exposure" standard to judge when liability for damage is triggered.  *See Porter v. Am. Optical Corp.*, 641 F.2d 1128, 1143 (5th Cir. 1981),  *Motorola, Inc. v. Associated Indem. Corp.*, 878 So. 2d 838 (La. App. 1st Cir. 2004), *Emar, Inc. v. Webster Homes, Inc.*, 488 So. 2d 346 (La. App. 3d Cir. 1986).  St. Charles's argument, though, is inapposite to the facts of this case.[24]

In *Motorola*, the plaintiffs brought a class action lawsuit alleging that customers developed brain cancer and other diseases after repeated exposure to harmful radio waves when using Motorola cell phones.  878 So. 2d at 840.  In determining whether coverage existed under the relevant insurance policy, the *Motorola* court held that the occurrence took place when the

---

[24] Rec. Doc. No. 70-1, pp. 4-6.

cell phones were first used because the continuous or repeated exposure and injuries began when the plaintiffs first began using their phones. *Id.* The court reasoned that this continuous exposure eventually developed into harmful cancers and diseases. *Id.* Relying on the *Motorola* holding, plaintiffs argue that the negligent design of the F/V Atlanta repeatedly exposed plaintiffs to circumstances that would lead to capsizing.[25]

Plaintiffs, however, ignore the underlying reasoning of the *Motorola* holding. "There is no requirement that each incident of exposure result in injury, only that the cumulative or progressive effect of repeated exposure result in injury." *Id.* at 842. The instant case does not evince the cumulative or progressive damage that characterized the occurrence in *Motorola*. There is no allegation that the condition of the F/V Atlanta worsened over time, increasing the likelihood of a capsizing. In contrast, the diseases in *Motorola* developed only after the plaintiffs were repeatedly exposed to allegedly harmful radio waves. St. Charles's citation to *Porter* fails for the same reason. There, the court adopted the Sixth Circuit's holding that the "injurious exposure" doctrine be used to prorate liability in asbestosis cases. 641 F.2d at 1145. The injury at issue in *Porter*, however, was "a cumulative, progressive disease," *id.* at 1142, and not similar to the injury here.

In *Emar*, the defendant improperly installed electrical service boxes during the construction of an apartment complex. 488 So. 2d at 347. After the defendant's insurance had lapsed, fires broke out in three of the electrical systems. *Id.* The fires were traced to the faulty installation, and it was determined that the protective coverings supplied with the breakers by the manufacturer had been removed during installation; this allowed contamination of the wiring

---

[25] Rec. Doc. No. 70-1, p. 5.

9

system by foreign material sprayed during the construction of the apartment complex.  *Id.*  The court ruled that the trial court had improperly granted summary judgment in favor of the defendant insurance companies and found that the contamination of the service boxes was damage that may have occurred during the policy period.  *Id.* at 349.

The *Emar* court distinguished *Oceanonics II*, noting that, in that case, there was no occurrence during the policy period because the damage--the crane failure--did not occur until the policy had lapsed.  *Id.*  The court reasoned that, because the electrical boxes may have been contaminated within the policy period, summary judgment was inappropriate.  The court found that the contamination of the electrical boxes and the subsequent fire would both be occurrences that would trigger coverage.  As St. Paul correctly argues, however, there was no damage to the F/V Atlanta and, therefore, no occurrence prior to the expiration of the policy period.[26]

Finally, plaintiffs argue that if the Court does see fit to grant defendant's motion for summary judgment, plaintiffs should first be permitted to conduct more discovery.[27]  Plaintiffs, however, have failed to properly request additional discovery.  Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, the nonmovant must present an affidavit or other equivalent

---

[26]The *Emar* court cited the Louisiana Supreme Court's holding in *Davis v. Poelman*, 319 So. 2d 351 (La. 1975), which came more than a year after that court's decision in *Oceanonics*.  In *Poelman*, the court found liability for damage to the plaintiffs' small airplane while it was in the custody of the defendants.  The Louisiana Supreme Court determined that the cause of the plaintiffs' loss was one defendant's violation of their agreement to store the airplane in a hanger.  *Id.* at 354.  In determining that damage to the airplane had occurred during the policy period, the court looked to the date on which the defendant had violated the agreement to house the airplane.  The court found that this violation was the occurrence that triggered liability.  *Id.*  The *Poelman* court, however, faced a situation of continuous exposure where damage to the airplane occurred over the course of more than a year; the court simply determined that some damage had occurred during the policy period.  *See Rubi v. Sunrise Homes, Inc.*, No. 94-473, 1995 La. App. LEXIS 643, at *26-27 (La. App. 5th Cit. Mar. 15, 1995) ("[W]here damage develops over a period of time from continuous or repeated exposure to injurious conditions, courts have determined the occurrence took place either at the inception of the exposure period or continuously during the entire course of exposure, as in asbestosis cases.") (citing *Poleman*, *Emar*).  The facts of *Poelman* are not sufficiently analogous to the facts before the Court to warrant application of the "continuous exposure" standard.

[27] Rec. Doc. No. 60-1, p. 6.

statement, preferably in writing, that conveys the need for additional discovery. *Wichita Falls Office Assocs. v. Banc One Corp.,* 978 F.2d 915, 919 (5th Cir. 1993); *see also Oiler v. Biomet Orthopedics, Inc.* No. 02-3778, 2004 U.S. Dist. LEXIS 2481, at *10-11 (E.D. La. Feb. 16, 2004). To obtain a continuance pursuant to Rule 56(f), a nonmovant must (i) request extended discovery prior to the court's ruling on summary judgment, (ii) put the district court on notice that further discovery pertaining to the summary judgment motion is being sought, and (iii) demonstrate to the district court how the requested discovery pertains to the pending motion. *Wichita Falls*, 978 F.2d at 919.

The nonmovant complaining that there has not been adequate opportunity for discovery is "required to state with some precision the materials he hoped to obtain with further discovery, and exactly how he expected those materials would assist him in opposing summary judgment." *Krim v. Banc Tex. Group, Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993); *see also Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 534-35 (5th Cir. 1999). The nonmovant may not "simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) (*quoting SEC v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir. 1980)).

In this case, plaintiffs have not properly filed a Rule 56(f) motion. Plaintiffs fail to demonstrate specifically how the requested discovery pertains to the present motion, and the Court does not find any indication that additional discovery will create a genuine issue of material fact. To the extent that plaintiffs' opposition to defendant's motion for summary judgment requests additional discovery, that request is denied.

The Court concludes that there is no genuine issue of material fact present with regard to

St. Paul's liability in this matter. Even viewing all of the facts in the light most favorable to plaintiffs and St. Charles, the Court does not find that an occurrence, as defined by the terms of the St. Paul insurance policy, took place during the policy period.

Accordingly,

**IT IS ORDERED** that the motion for summary judgment filed on behalf of defendant, St. Paul,[28] is **GRANTED**, and plaintiffs' claims against St. Paul are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, February __13th__, 2007.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[28] Rec. Doc. No. 70-1